ROBERT COLES *et al.*, Appellees, v. J. W. KENNEDY, Appellant.

1. **Contract:** SUBSCRIPTION TO STOCK IN CORPORATION: CONSIDERATION. The defendant, being the owner of a silver mine in Arizona, prospected the same to the extent of driving a tunnel for a short distance, and sinking a shaft to about twenty feet, resulting

in a find of a small vein of silver ore. He thereupon organized a stock company in Iowa to operate said mine, with a capital stock of five hundred thousand dollars. In consideration of seventy thousand dollars' worth of such stock the plaintiff agreed to pay defendant seventeen hundred and fifty dollars, or convey to him certain real estate. *Held*, that the contract was not without consideration, nor was the consideration so inadequate as to constitute a badge of fraud.

2. ———: ———: FRAUD. The representation by a promoter of a corporation to one, as an inducement to his subscription to the capital stock in such corporation, that a person named, of wide reputation for his sagacity in business affairs, had agreed to subscribe for a large amount of the same stock, without disclosing the fact that said stock was given such person as a gratuity for the use of his name, is such a fraud as will entitle one who has subscribed for stock upon the faith of such representation to have his contract of subscription canceled in a court of equity.

*Appeal from Lucas District Court.*—HON. CHARLES D. LEGGETT, Judge.

SATURDAY, OCTOBER 25, 1890.

THIS is an action in equity to cancel and annul a certain written contract for the conveyance of real estate, upon the grounds that the same was obtained by fraud and without consideration. The answer denies each allegation of fraud and want of consideration, and asks specific performance of the contract. A decree was entered in favor of the plaintiff granting the relief prayed for in the petition. The defendant appeals.

*F. M. Stuart*, for appellant.

*Mitchell & Penick*, for appellees.

GIVEN, J.—The testimony shows that in 1880 appellant was the owner of a mining claim in Arizona, called the "Mina Rica," that had been prospected to the extent of driving a tunnel for a short distance, and sinking a shaft to about twenty feet. A small vein of silver ore was found in the shaft, but not in quantities to justify milling the same. In the spring of 1880, appellant returned from Arizona to Chariton, bringing

with him specimens of ore which he represented to have
been taken from his claim.   He proceeded to organize a
joint-stock company for gold and silver mining in Ari-
zona, "and to purchase the three-fourths interest of the
Mina Rica mine."   A company was organized with a
large capital stock, divided into shares of twenty dol-
lars each.   The appellee subscribed for four thousand
shares of stock, to be paid for at "fifty cents per share
as per agreement with J. W. Kennedy and R. M.
Moore."   The contract in question was executed and
acknowledged April 1, 1880.   By it appellee acknowl-
edged himself to be indebted to the appellant in the
sum of seventeen hundred and fifty dollars, to be paid
on or before April 1, 1881, and, if not paid at that time,
appellee was to make to appellant a warranty deed for
a certain lot in Chariton.   If one-half of said sum was
paid within the time named, appellant was to have a
deed for the east half of said lot.   The only consider-
ation for this contract was thirty-five hundred of the
four thousand shares subscribed for by appellee, the
other five hundred shares being given to him free of
charge.   After the organization of the company, appel-
lant gave to appellee and other subscribers orders on
the company for their stock.   These orders were taken
up, and the parties credited with their stock, and state-
ments issued to them showing the amount they were
entitled to.   As the company desired to raise funds by
the sale of stock ; it was resolved that none should
then be issued to the promoters.

I.   But two questions are involved in this case,
to-wit, was the agreement without consideration, and
was the plaintiff induced to sign the same
by fraud ?   In considering these questions
we are to look at the facts as they were

1. CONTRACT:
subscription
to stock in
corporation:
consideration.

then known to the parties.   It is not true, as urged, that
all the mining company had was a hole in the ground,
twenty feet deep.   It had the right to prosecute its bus-
iness of mining upon that claim to whatever extent it
pleased.   True, the result was uncertain ; but it owned a
mining claim that had been prospected to the extent

stated, located in a mining region in the vicinity of valuable mines, and had at least an inviting show of valuable ore. The consideration for the agreement in question was a large amount of stock in the company owning this mining claim, with its limited development and the right to develop it indefinitely. There was certainly not a want of consideration for this contract.

II.   We next inquire whether the appellee was induced to execute this contract by reason of fraud, as alleged upon the part of the appellant. It is urged that there is such inadequacy of consideration as to indicate fraud. There was great uncertainty as to what appellee might realize out of the consideration moving to him, but it was not so inadequate as to constitute a badge of fraud. The fraud alleged is that to induce appellee to subscribe for stock in the mining company, and to execute said agreement, appellant exhibited specimens of silver ore containing large and rich proportions of silver, and caused it to be represented to appellee that said ore was taken from the Mina Rica mine ; that appellant represented to appellee that one S. H. Mallory had subscribed and paid for five thousand shares in the said mining company ; that each of said representations was false and fraudulent ; that said mine did not have any silver or gold ore in it, and never had ; that the ore exhibited to appellee did not come from and was not taken from said mine ; that S. H. Mallory had subscribed for five thousand shares with a secret contract with defendant that they should cost him nothing. All the witnesses testifying upon that subject agreed in stating that there was silver ore in the shaft sunk upon the claim. Appellant testifies that the specimens of ore which he exhibited to appellee were taken from that claim, and this testimony stands uncontradicted by any reliable evidence.

S. H. Mallory had resided in Chariton for many years, and was known in the community as a man of

*2. ——:——:*
*fraud.*

large business experience and capacity, and as a successful business man, whose name as a subscriber would be influential in inducing others to take stock in the mining company. While it is true that Mr. Mallory's name follows that of appellee on the subscription list, it appears that he had agreed to take stock previous to the time the list was circulated for signatures, and that the fact of his agreeing to take five thousand shares of the stock was held out to appellee as an inducement to execute the contract in question. The testimony shows that Mr. Mallory was to have his stock free of charge, and that it was given to him to secure the influence of his name in procuring appellee and others to subscribe. The fact that Mr. Mallory was not to pay for his stock was concealed from the appellee. To have disclosed it would have been to defeat the very purpose for which the five thousand shares were given to Mallory. We have no doubt but the belief that Mr. Mallory had subscribed for five thousand shares of the stock, and that he had or was to pay for the same, operated as an inducement to appellee to subscribe for stock, and execute the contract in question. This was such a fraud as cannot have the approval of a court of equity, and for which the contract induced by it should be canceled and held for naught.

On the trial appellee examined several witnesses as to representations made to them as inducements to subscribe for stock, to which defendant objected because not made to or in the hearing of the plaintiff, and did not operate as an inducement to him to sign the contract in question. This testimony was taken under defendant's objection. It is not now claimed to be admissible, and, therefore, has not been considered.

The views expressed lead us to the conclusion that the decree of the district court should be AFFIRMED.