**MORRIS et al. v. McGOUGH et ux. (No. 1187.)**

(Court of Civil Appeals of Texas. El Paso. May 5, 1921.)

**1. Mines and minerals ⊜⇒55(8)—Answer enumerating facts constituting fraud sufficient against demurrer in suit for interest in minerals conveyed.**

In suit for title to an undivided one-quarter interest in and to all gas, oil, and other minerals in a certain 160 acres of land, the petition alleging that defendants executed and delivered to plaintiffs a general warranty conveyance to such minerals, but after loss of such conveyance prior to registration refused to give a substituted conveyance, answer enumerating facts constituting fraud on defendants by plaintiffs, but not specifically charging fraud, *held* good as against general demurrer.

**2. Contracts ⊜⇒94(8)—Suppression of truth an affirmative fraud.**

Suppression of truth by one of two contracting parties is as affirmative a fraud as a false statement of a fact, as it prevents the minds of the parties from meeting on the actual terms of their contract.

**3. Mines and minerals ⊜⇒55(8)—Peremptory instruction properly refused plaintiffs guilty of fraud on defendants in respect of mineral conveyance.**

Where plaintiffs, shrewd business men, dealing with defendants, an unlearned old man and his wife, with respect to a conveyance by them of an interest in minerals, stood by and saw defendants making a mistake in calculation as to royalties to be paid as consideration therefor, they were guilty of fraud, and in their suit wherein defendants ask only the consideration for the conveyance in fact agreed on, the trial court properly refused a peremptory instruction for plaintiffs.

**4. Mines and minerals ⊜⇒55(8)—In suit for title to interest in minerals conveyed wherein defendants alleged facts constituting fraud, they could testify to anything tending to prove it.**

In suit for title to an undivided one-quarter interest in and to all gas, oil, and other minerals in a certain 160 acres of land, the petition alleging that defendants executed and delivered to plaintiffs a general warranty conveyance to the minerals, but after loss of such conveyance prior to registration refused to give a substituted conveyance, and the answer enumerating facts constituting fraud, but not specifically charging fraud, where the facts charged in the answer relative to plaintiffs' standing by while defendants made a miscalculation of royalties in the lease constituted fraud, it was proper for the court to permit defendants to testify to anything which tended to prove their allegations.

**5. Appeal and error ⊜⇒207 — Argument of counsel as to how to bring in special verdict prejudicial error.**

Argument of defendants' counsel to the jury that, if they desired to bring in a verdict in favor of defendants they answer the first question "No" and the rest of the questions submitted to them in the general charge "Yes," *held* reversible error, though plaintiff did not request the court to withdraw the remarks from the consideration of the jury by a charge to such effect.

Error from District Court, Eastland County; E. A. Hill, Judge.

Action by T. J. Morris and another against W. C. McGough and wife. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

Conner & McRae, of Eastland, for plaintiffs in error.

Burkett, Anderson & Orr, of Eastland, for defendants in error.

HARPER, C. J. Plaintiffs in error, T. J. Morris and J. E. Spencer, instituted suit against defendants in error, W. C. McGough and wife, Drucilla McGough, in the district court of Eastland county, Tex., for title to an undivided one-fourth interest in and to all oil, gas, and other minerals in and under 160

acres of land described in their original petition, alleging that defendants in error, on about September 28, 1918, made, executed, and delivered to them a general warranty conveyance to said minerals, but that prior to the registration such conveyance became lost, and that defendants in error refused to give a substituted conveyance. Defendants in error admitted the execution and delivery to plaintiffs in error of such mineral conveyance, together with another like conveyance, selling to them an additional undivided one-fourth interest in said minerals in and under the lands described in the original petition filed, but denied a knowledge of the contents of either of such conveyances, "except that on, to wit, a few days prior to the execution of such instruments, the plaintiff, T. J. Morris, approached" them and offered to buy a portion of the mineral rights in their said lands and asked defendant W. C. McGough what he was holding same for, and that said defendant informed T. J. Morris that he was asking $100 per acre for full royalty and $50 per acre for one-half royalty; that they went out to said lands, and T. J. Morris looked over the premises, and informed defendants that he would take one-fourth royalty interest at such price; that the next day, W. C. McGough went to Carbon and some kind of papers were fixed up, and that he signed the same, and for which plaintiffs agreed to pay $2,000 for the interest conveyed, which defendants thought was the amount that one-fourth royalty interest would amount to at the rate of $100 per acre full royalty, and, so believing, executed said instrument, without reading the same or having it explained to them, and not understanding at the time that they were in truth getting only $50 per acre full royalty, and alleged the illiteracy and old age of W. C. McGough, and that he had to depend on others to make calculations for him; that on the next day after the execution and delivery of the first royalty conveyance, T. J. Morris came to W. C. McGough and stated that he would take another one-fourth of the royalty at the same stipulated price of $100 per acre for full royalty, and that, laboring under the same "mistake or miscalculation," defendants in error executed and delivered a second mineral conveyance to plaintiffs in error, conveying to them an additional one-fourth royalty interest in the 160-acre tract of land; that in truth plaintiffs in error had agreed to pay them $8,000 for the one-half royalty interest conveyed instead of the $4,000 which they really did pay, and which defendants in error accepted, under such misapprehension of the facts, but that plaintiffs in error well knew that they were paying only $50 per acre for full royalty; that they had known the plaintiff for a long time, had had much dealings with T. J. Morris, and relied implicitly upon him to correctly calculate the amount which one-fourth royalty in the 160 acres would amount to at the rate of $100 per acre, and, believing that said Morris had so correctly calculated same, signed the instrument, and that, had they known that they were getting only at the rate of $50 per acre instead of $100, they would not have signed said instruments or either of them, nor would they have accepted the sums of money so paid by plaintiffs.

"By supplemental petition plaintiffs in error, among other things, pleaded that at the time of the purchase of the one-fourth royalty interest on September 28, 1918, they agreed to pay defendants in error $2,000 as follows: $500 cash, and the balance in three payments of $500 each, evidenced by their three notes, payable on January 1, 1919, April 1, 1919, and July 1, 1919—and that defendants in error, with a full knowledge and notice of all matters set out in their said answer, accepted such payments, and that they were thereby estopped from asserting any defects in either of said royalty deeds, and also pleaded waiver and ratification.

"Defendants in error filed a supplemental answer, in addition to a general denial, alleging, in effect, that they accepted such payments with the understanding on their part that they were to receive $100 per acre full royalty, and that as soon as they ascertained the mistake they insisted on plaintiffs in error paying them an additional $2,000.

"The cause was submitted on special issues, and judgment rendered thereon decreeing the cancellation of the last mineral conveyance, and in the alternative that, if plaintiffs in error should pay $4,000 into the register of the court within 30 days from the date of judgment, the defendants in error should execute and deliver a mineral conveyance to plaintiffs in error conveying an undivided one-fourth mineral interest in said lands."

By writ of error the case is here regularly for review.

The appellants' second assignment charges that the court erred in refusing to instruct a verdict for the plaintiffs. The propositions urged are: (1) That the pleadings of defendants do not charge plaintiffs with fraud or mutual mistake; (2) no evidence of fraud or mutual mistake.

[1] That it does not charge mutual mistake is evident, but the facts enumerated constitute fraud, and this is all that is necessary, for fraud is not a fact, but a conclusion of law from established facts, and, so far as the pleadings are concerned, when tested by a general demurrer, the question is: Are the facts alleged such, if proved, that the court must infer fraud as a legal sequence; if so, it is not necessary to specifically charge fraud. Mussina v. Goldwaite, 34 Tex. 126, 7 Am. Rep. 281; Ashley v. Holland, 180 S. W. 635.

[2] Suppression of the truth is as affirmative a fraud as a false statement of a fact;

for in such case the minds of the parties do not meet upon the actual terms of their contract. Ins. Co. v. Reveirre, 188 S. W. 254; Black on Rescission and Cancellation, §§ 457 and 458.

[3] The allegations are that the appellees are an unlearned old man and his wife, who were dealing with men whom they had known for many years, in whom they had implicit confidence, that the latter were active, shrewd business men, and that, with full knowledge of the price for which appellees had agreed to make the conveyance, they stood by and saw the appellees make the mistake in calculation, and themselves drew the last instrument which they now seek to compel him to substitute. Such facts are not consistent with fairness and honesty on the part of appellants; therefore constitute fraud, in fact, such as to avoid the instrument. However, appellees do not seek to avoid, but agree to execute, the conveyance for the consideration in fact agreed upon, and the jury have found in favor of the truth of these allegations, so the court did not err in refusing a peremptory instruction for plaintiffs.

[4] The third assignment charges that it was error for the court to admit the testimony of McGough and his wife concerning the matters charged. Since the facts charged constitute fraud, it was proper for the court to permit the witnesses to testify to anything which tended to prove the allegations.

[5] Error is assigned to the argument of defendants' counsel to the jury to the effect:

"If they desired to bring in a verdict in favor of Uncle Bill McGough that they answer the first question 'No,' and the rest of the questions submitted to them in his general charge 'Yes. "

This constitutes such error as requires a reversal of the cause. Patterson v. Bushong, 196 S. W. 962; H. & T. C. Ry. Co. v. Long, 219 S. W. 212; G., H. & H. R. Co. v. Hodnett, 182 S. W. 7.

Counsel for appellees says that no reversible error can be predicated upon this argument because the appellant did not request the court to withdraw the remarks from the consideration of the jury by a charge to that effect.

To have undertaken to withdraw these remarks could have no other effect than to accentuate their import upon the minds of the jury. The primary purpose for submitting a case on special issues is to keep from the jury a knowledge of the effect upon the judgment which their findings of fact may have in law. Fain v. Nelms, 156 S. W. 281; Railway Co. v. Hodnett, 182 S. W. 7; S. A. & U. G. R. Co. v. Dawson, 201 S. W. 250.

The case is reversed and remanded because of the improper argument of counsel.